# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**DEBRA L. CASTEEL-ELLISON,**
**Claimant Below, Petitioner**

**FILED**

September 15, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No.16-0949**  (BOR Appeal No. 2051257)
(Claim No. 2015009955)

**NEW RIVER HEALTH ASSOCIATION, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Debra L. Casteel-Ellison, pro-se, appeals the decision of the West Virginia Workers' Compensation Board of Review.  New River Health Association, Inc., by Lisa Warner Hunter, its attorney, filed a timely response.

The issue on appeal is the compensability of the claim. On October 3, 2014, the claims administrator denied compensability of Ms. Casteel's claim for right carpal tunnel syndrome. The Office of Judges reversed the claims administrator's decision in its April 11, 2016, Order and held the claim compensable for right carpal tunnel syndrome. The Order was reversed by the Board of Review on September 1, 2016. The Board of Review vacated the Office of Judges' Order and reinstated the claim administrator's rejection of the claim. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the Board of Review's decision is not supported by a preponderance of the evidence. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

Ms. Casteel-Ellison, who is employed in data entry for New River Health Association, filed an application for workers' compensation benefits arising from a diagnosis of right carpal tunnel syndrome she sustained during the course of her employment. On September 16, 2014, Ms. Casteel-Ellison was seen by Whitney Boggs, M.D., for complaints of right hand swelling and pain. She provided a history of working on a computer, typing, and using a mouse. Dr. Boggs diagnosed carpal tunnel syndrome and recommended she wear splints. She saw Dr. Boggs again on

September 25, 2014, when she reported that she had been icing her wrist at least once a day and that her hand first started hurting about six months ago. Dr. Boggs recommended she undergo nerve conduction velocity testing.

The employee's and physician's report of occupational injury form was completed by Ms. Casteel-Ellison and Dr. Boggs on September 24, 2014. Ms. Casteel-Ellison alleged right and left hand injuries due to computer work and data entry. Dr. Boggs stated that he first treated Ms. Casteel-Ellison on September 16, 2014, when he diagnosed carpal tunnel syndrome and indicated both of her hands were injured. On October 3, 2014, the claims administrator denied compensability due to lack of testing to establish the diagnosis of carpal tunnel syndrome.

Barry Vaught, M.D., performed EMG/NCV testing on November 19, 2014. The testing revealed electrophysiologic evidence for mild right median mononeuropathy at the wrist consistent with carpal tunnel syndrome. Ms. Casteel-Ellison was seen by Matthew Nelson, M.D., on February 4, 2015, for moderate pain and numbness in her right hand. She reported loss of grip strength. Dr. Nelson diagnosed carpal tunnel syndrome and recommended a right carpal tunnel release.

Ms. Casteel-Ellison testified at a hearing before the Office of Judges on April 2, 2015. She stated she works as a "comm" center representative, which is a clerical position. Her job duties included adding information to medical records by inputting information and transferring faxes, mail, and e-mails into the medical record. She had been working at this job for three years. She believes the carpal tunnel syndrome was work-related because she spends all day using a keyboard and mouse and moved her thumb and finger constantly. She is five feet six inches tall and weighs 223 pounds. She has high blood pressure for which she takes medication. Dr. Boggs did grip strength testing and some other testing and diagnosed her with carpal tunnel syndrome. Dr. Boggs prescribed ibuprofen, an anti-inflammatory, and wrist splints. She denied having any hobbies that involved the use of her wrists.

Marsha Bailey, M.D., performed a medical records review and provided a report dated July 1, 2015. Dr. Bailey opined that the physical examinations by Dr. Boggs were nonspecific and not supportive of median neuropathy or carpal tunnel syndrome. The thenar atrophy documented by Dr. Boggs supported a diagnosis of severe, long standing median nerve compression. The muscle hypertrophy of the right hand, right hand edema, and osteoarthritic joints of both hands were not consistent with the diagnosis of carpal tunnel syndrome. Dr. Bailey acknowledged that the information provided suggested Ms. Casteel-Ellison had right carpal tunnel syndrome. However, Dr. Bailey opined that the right carpal tunnel syndrome was not work-related. Ms. Casteel-Ellison's clerical activities did not show a relationship with causing carpal tunnel syndrome. Her weight problem contributed to the carpal tunnel syndrome. While Dr. Bailey found Ms. Casteel-Ellison had no occupational risks associated with carpal tunnel syndrome, there were personal risk factors including her obesity and osteoarthritis of both hands.

Ms. Casteel-Ellison underwent the carpal tunnel release and was healing well when she was seen by Nathan Doctry, M.D., on June 28, 2016. He recommended occupational therapy on August 1, 2016.

The Office of Judges reversed the claims administrator's October 3, 2014, decision and held the claim compensable for right carpal tunnel syndrome on April 11, 2016. It noted the claims adjuster originally denied the claim due to a lack of testing to establish a diagnosis. However, that problem was satisfied through the introduction of valid EMG/NCV testing. The employer relied on the opinion of Dr. Bailey who did not examine Ms. Casteel-Ellison, but instead provided a medical records review. Dr. Bailey was hesitant to confirm the diagnosis of carpal tunnel syndrome due to the findings of muscle atrophy, edema, and osteoarthritic joints in Ms. Casteel-Ellison's right hand. Dr. Bailey also opined that the carpal tunnel syndrome was not work-related because Ms. Casteel-Ellison did not have occupational responsibilities that were highly repetitious, highly forceful, or extremely awkward.  Dr. Bailey opined the Ms. Casteel-Ellison's weight and/or osteoarthritis could have been the cause of the carpal tunnel syndrome.

The Office of Judges also noted that Dr. Vaught, a neurologist, and Dr. Nelson, an orthopedic surgeon who examined Ms. Casteel-Ellison, had no hesitancy in diagnosing right carpal tunnel syndrome. Additionally, while she may have had a weight problem, her weight did not vary more than twenty pounds over seven years. Additionally, Ms. Casteel-Ellison had no documented symptoms of carpal tunnel syndrome prior to working for the employer, even though her weight problem existed for four years prior. The Office of Judges found the employer was asking it to find that a medical report from a physician who never examined the Ms. Casteel-Ellison constituted a preponderance of the evidence. The Office of Judges declined to do so and found the carpal tunnel syndrome compensable.

The Board of Review reversed the Office of Judges and found that its analysis and conclusions were clearly wrong in view of the reliable, probative and substantial evidence of the whole record. The Board of Review referred to West Virginia Code of State Rules § 85-20-41(2006) regarding conditions that can precipitate carpal tunnel syndrome, as well as the occupational groups at high risk for carpal tunnel syndrome. It found Ms. Casteel-Ellison's job duties were normal clerical activities that did not fall into the high risk categories. Additionally, she had increased body mass, which was a non-occupational risk factor. It concluded that the preponderance of the evidence failed to demonstrate Ms. Casteel-Ellison's employment duties had any relationship to her carpal tunnel syndrome.

After review, we find the Board of Review erred in reversing the Office of Judges' Order. Ms. Casteel-Ellison did not have any problems with her right hand until she started using the mouse in order to transfer medical information into the charts every day, all day while she was at work. She has no other conditions that contribute to the development of carpal tunnel syndrome. A preponderance of the evidence establishes the compensability of the carpal tunnel syndrome.

For the foregoing reasons, we find that the decision of the Board of Review is not supported by a preponderance of the evidence. Therefore, the decision of the Board of Review is reversed and remanded with instructions to reinstate the April 11, 2016, Office of Judges' Order.

Reversed and remanded

3

**ISSUED:  September 15, 2017**


**CONCURRED IN BY:**
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis Ketchum

**DISSENT**:
Chief Justice Allen H. Loughry II
Justice Elizabeth D. Walker

LOUGHRY, Chief Justice, dissenting:

I dissent to the majority's decision to reverse the final order of the Board of Review and reinstate the April 11, 2016, order of the Office of Judges holding the claim compensable for right carpal tunnel syndrome.  The evidence in the record simply does not support the conclusion that the claimant's carpal tunnel syndrome is work-related.  The applicable workers' compensation regulations note that "studies have failed to show a relationship between normal clerical activities and CTS" and explain that "when evaluating CTS in this work setting, a careful search for other contributing factors is essential."  85 C.S.R. 20-41.5.  The regulations further indicate that "[d]iabetes mellitus, hypothyroidism, obesity, alcohol abuse, rheumatoid arthritis, postural abnormalities and other conditions can precipitate CTS symptoms."  85 C.S.R. 20-41.4.  The evidence in the record shows that the claimant had only performed clerical duties for three years and that, while she used a computer keyboard and mouse, her work was not highly repetitive, highly forceful, or extremely awkward.  Moreover, the claimant's medical records establish that she suffers from osteoarthritis in both hands and obesity–two non-occupational risk factors for the development of carpal tunnel syndrome.  Dr. Marsha Bailey reviewed the evidence and opined that the claimant's condition is not a result of her work. Based on all the above, the Board of Review properly concluded that "the preponderance of evidence fails to demonstrate that the claimant's employment duties had any relationship to her carpal tunnel syndrome."  Accordingly, I would have affirmed the Board of Review's decision.

WALKER, J., dissenting:

I respectfully dissent from the majority's decision to reverse the order of the Board of Review reinstating the rejection of this claim for right carpal tunnel syndrome.  The Board correctly concluded that the decision of the Office of Judges (OOJ or ALJ) was clearly wrong. The OOJ failed to give any weight to the occupational medicine expert and to follow the guidelines in Rule 20 regarding factors to consider as to the compensability of carpal tunnel syndrome.

The majority essentially conducts a reweighing of the evidence, which is specifically prohibited by statute,[1] and offers no specific analysis as to why the Board erred. While the majority states that the claimant has "no confounding factors," there is undisputed evidence in the record documenting that the claimant is obese and has osteoarthritis, which can precipitate symptoms according to Rule 20 and the occupational medical expert.

With respect to the OOJ decision, the Board had more than sufficient grounds upon which to reverse. One example is the bizarre and medically unsupported analysis of the ALJ that the claimant's obesity could not have caused her symptoms because it pre-existed her employment. This logic is completely without merit. The ALJ does not cite to any authority stating that obesity must be precipitous or occur at the same time as the onset of the carpal tunnel symptoms.

The Board also correctly found that the OOJ was clearly wrong in giving greater weight to the opinions of the treating physicians on the issue of the cause of the carpal tunnel over the occupational medicine expert and the well-settled medical guidelines incorporated into Rule 20. Deference to the treating physicians would be appropriate regarding the diagnosis, but the expert in the area of causation in this claim was clearly Dr. Marsha Bailey, the Board Certified Occupational Medicine specialist. The fact that she did not examine the claimant does not make her opinion unreliable because she reviewed all the necessary testimony and documents needed to render a credible opinion. The record does not contain any evidence that either treating physician had any expertise in workplace injuries or diseases to justify giving their opinions greater weight on the issue of causation.

The more important reason to affirm the Board is to make clear that the OOJ must apply the statutes and regulations as written. The following excerpt from the ALJ's decision demonstrates the OOJ's lack of adherence to the Rule 20 guidelines and the statutory law requiring that an injury or disease be sustained "in the course of and resulting from" employment prior to being held compensable under West Virginia law:

> The evidence presented by the claimant regarding the etiology of her carpal tunnel syndrome may well not be conclusive. Workers' Compensation claims rarely involve individuals in peak physical condition and pristine health. Such claims are more likely to find individuals who are simply representatives of the general population who suffer from any number of health issues. In Workers' Compensation claims, it is necessary to take such persons as they are presented and attempt to determine if a relationship between their symptoms and their work-related activities exists.

This language suggests that pre-existing factors that are likely the cause of carpal tunnel should not be considered and that the literature documenting that there is no way to determine the cause in some individuals should be ignored. There is no statutory or other authority permitting an ALJ

---

[1] W.Va. Code §23-5-15(d).

5

to disregard these facts. Further, under this ALJ's analysis, it is but a formality to "determine if a relationship between their [carpal tunnel] symptoms and their work-related activities exists." The ALJ in this claim simply concluded that because the treating physicians diagnosed the condition and the obesity pre-dated the symptoms by four years, then the cause of the carpal tunnel syndrome is the claimant's work. It is curious that the ALJ made no attempt to discuss in any detail how the claimant's short, three-year employment performing clerical duties, which did not involve highly forceful, highly repetitive movements or awkward hand positioning over a long period of time, could cause her carpal tunnel syndrome.

I find the ALJ's analysis appallingly result-oriented. The Board correctly reversed the decision. I would have affirmed it.